UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-3, JAMAR HARRIS,

    Defendant.
_____/

Case No. 15-cr-20089
Hon. Matthew F. Leitman

## ORDER DENYING DEFENDANT JAMAR HARRIS' RENEWED MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL (ECF #119)

### INTRODUCTION

On January 18, 2015, Defendant Jamar Harris helped confederates Lahmal Bell ("Bell") and Major Harris rob a Radio Shack in Lincoln Park, Michigan. During the robbery, Bell displayed a firearm and pointed it at one of the Radio Shack employees. Bell, Major Harris, and Jamar Harris left the store with a stash of Apple iPhones.

A grand jury later charged Jamar Harris with one count of interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and one count of aiding and abetting Bell's use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Jamar Harris pleaded guilty to the Hobbs Act charge and went to trial on the charge of aiding

1

and abetting the use and carrying of a firearm. His defense at trial was that while he intended to commit a robbery, he did not intend to commit, or to assist, an *armed* robbery. A jury rejected that defense and convicted him of aiding and abetting Bell's use and carrying of a firearm. He now moves for a judgment of acquittal or, in the alternative, for a new trial (the "Motion"). (*See* ECF #119.) For the reasons stated below, the Court **DENIES** the Motion.

## ANALYSIS

### I.  The Evidence at Trial Was Sufficient to Support the Conviction

Jamar Harris first contends that he is entitled to a judgment of acquittal because the government's evidence at trial was insufficient to support his conviction. In this context, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). As the government correctly notes, "[a] convicted defendant bears 'a very heavy burden' to show that the government's evidence was insufficient." *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (quoting *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012)).

Jamar Harris' insufficiency argument focuses on the intent element of the aiding and abetting offense. To satisfy that element, the government was required

to prove that he intended to assist the commission of an *armed* robbery. *See Rosemond v. United States*, 134 S. Ct. 1240, 1245-50 (2014). And to make that showing, the government had to prove that Jamar Harris had "advance knowledge" that one of his confederates would use a weapon during the robbery. *Id.* at 1243. Jamar Harris insists that the government did not present "any sufficient evidence" that he had advance knowledge that a firearm would be used during the robbery or that he intended to assist an armed robbery. (Motion, ECF #119 at 5-9, Pg. ID 1098-1102.) The Court disagrees.

At trial, the government presented several pieces of evidence that tended to establish Jamar Harris (1) had advance knowledge that at least one of his confederates would use a gun during the robbery and (2) intended to assist an armed robbery. That evidence included the following:

- Major Harris testified that prior to the robbery, he told Jamar Harris that they were "going to hit a lick for some phones," and Jamar Harris thereafter proceeded to participate in the robbery scheme. (12/1/15 Trial Tr., ECF #106 at 40, Pg. ID 815.) Major Harris explained that when he used the words "hit a lick," he was referring to an *armed* robbery.[1] (*Id.* at 41-42, Pg. ID 816-17.)

---

[1] While Jamar Harris presented evidence that the phrase "hit a lick" may have a number of different meanings (*see* 12/1/15 Trial Tr., ECF #106 at 93, Pg. ID 868), the government undercut the force of this evidence by showing that the other possible meanings did not fit the circumstances in which Major Harris used the phrase when he spoke with Jamar Harris. (*See id.* at 111-12, Pg. ID 886-87.) Moreover, as noted above, Major Harris testified that when he used the phrase in his conversation with Jamar Harris, he (Major) was expressing his intent to commit an *armed* robbery.

- The video recording of the robbery shows that Jamar Harris did not look surprised, nor did he seem caught off guard when he saw Bell display the firearm. The jury could reasonably have concluded that if Jamar Harris was truly unaware that a gun would be used during the robbery, he would have been surprised and, more importantly, would have expressed that surprise. The jury could reasonably have determined that Jamar Harris' lack of surprise during the robbery lent support to the government's theory that Jamar Harris knew before the robbery that Bell would display a gun.

- The video recording of the robbery can reasonably be viewed as depicting the execution of a plan that had been hatched in advance. Each of the participants appears to play a well-defined role. Major Harris wears a security guard jacket to allay suspicion; Jamar Harris distracts the sales person; Bell surprises the sales person with the weapon; Jamar Harris (along with Bell) then immediately leads the sales person directly to the back storage area in which the iPhones are stored; Major Harris detains the other sales person in a back office; and the three robbers exit the back of the store after the phones have been loaded into bags. The manner in which the three robbers executed the robbery could reasonably be deemed to support the government's claim that all three participants – including Jamar Harris – had advance knowledge of all aspects of the plan, including the intended use of the firearm.

- After the robbery, Jamar Harris did not express surprise nor disapproval that Bell used a weapon – as one might have expected Jamar Harris to do if the use of the weapon had been unexpected. (*Id.* at 54-55, Pg. ID 829-30.) Jamar Harris' lack of surprise or concern could reasonably be deemed to support the government's contention that he knew before the robbery that Bell would use the gun.

All of this evidence, when viewed in the light most favorable to the government, is sufficient to support the jury's finding that Jamar Harris had advance knowledge that a weapon would be used during the robbery and that he intended to assist an armed robbery.

Moreover, the government presented sufficient evidence of an additional and independent theory of Jamar Harris' advance knowledge and intent. As the Supreme Court explained in *Rosemond*, a defendant has sufficient advance knowledge and intent where (1) he learns that his confederate will use a gun at a time when he (the defendant) still has an opportunity to withdraw from the commission of the underlying offense and (2) he nonetheless proceeds to assist in the commission of that offense. *See Rosemond*, 134 S. Ct. at 1249, 1251 n.10; *see also United States v. Robinson*, 799 F.3d 196, 201 (2d Cir. 2015) (holding that defendant had advance knowledge where he saw confederate brandishing a gun as he rounded the corner and joined carjacking instead of leaving the scene). Here, the government presented sufficient evidence that even if Jamar Harris did not know before the robbery began that Bell would use a firearm, Jamar Harris (1) gained that knowledge at a time he could have withdrawn from the robbery and (2) proceeded to assist in the robbery rather than withdrawing from it.

More specifically, the government's evidence showed that Jamar Harris had at least two opportunities to withdraw from the robbery after Bell drew the gun, but before the robbery was committed. First, he could have walked out the front door of the store as soon as Bell pulled the gun. Second, he could have exited the back of the store through the rear door on his way to the storage area containing the phones. He had access to both of these means of egress before he and Bell reached

5

the area of the store containing the phones. But instead of leaving through one of these exits, Jamar Harris proceeded to assist with the theft of the phones. Under these circumstances, the jury could reasonably have concluded that Jamar Harris acted with sufficient advance knowledge and intent.

Jamar Harris counters that he did not have a *reasonable* opportunity to leave once Bell displayed the firearm. He argues that any attempt to leave at that point would have created a risk that Bell would actually fire the gun – either at him (Jamar Harris) or at one of the store employees. (*See* Motion, ECF #119 at 6, Pg. ID 1099.) That was certainly a proper argument for Jamar Harris to present to the jury. And he did so. (*See* 12/2/15 Trial Tr., ECF #107 at 54, Pg. ID 987.) But the jury rejected this argument.[2] The Court cannot conclude that the jury erred in doing so. Bell was a close friend of Major Harris (who was Jamar Harris' brother), and the jury could reasonably have concluded based upon that close relationship that there was little risk that Bell would have fired his weapon at Jamar Harris if Jamar had attempted to leave. Likewise, the government presented evidence that Bell was disinclined to fire the weapon under any circumstances (*see* 11/30/15

---

[2] This assumes, of course, that the jury reached the question of whether Jamar Harris could have withdrawn once Bell displayed the weapon. If the jury concluded that Jamar Harris knew that one of his confederates intended to use a gun before the robbery began – which, as described above, is a finding that could have been supported by the government's evidence – then the jury would not have had to reach the question of whether Jamar Harris had an opportunity to withdraw from the robbery after Bell pulled the gun on the store employee.

Trial Tr., ECF #105 at 136, Pg. ID 756; 12/1/15 Trial Tr., ECF #106 at 37, Pg. ID 812), and the jury could have concluded from this testimony that Jamar Harris' departure would not have caused Bell to fire his weapon. Moreover, Jamar Harris has not identified any *evidence* that his attempt to depart would have materially increased the risk that Bell would fire the weapon; he offers only speculation on that point.

For all of these reasons, the Court rejects Jamar Harris' argument that the government failed to present sufficient evidence on the intent element of the aiding and abetting charge. He is not entitled to a judgment of acquittal on this basis.

## II.    The Jury Instructions Do Not Provide a Basis for Relief

Jamar Harris next contends that he is entitled to a new trial based upon mistakes the Court made when instructing the jury prior to its deliberations. His argument focuses on a portion of the Court's instructions concerning the required "advance knowledge" under *Rosemond*. In the relevant portion, the Court explained to the jury that:

> It is sufficient if Jamar Harris gained the knowledge in the midst of the other crime, as long as – excuse me – in the midst of the underlying crime so long as after acquiring the knowledge, Jamar Harris had a realistic opportunity to withdraw but instead chose to continue to participate in the crime. You may, but need not, infer that Jamar Harris had sufficient foreknowledge if you find that Jamar Harris chose to continue his participation in the crime after he knew that Lahmal Bell and/or Major Harris was using or carrying a firearm.

7

(12/2/15 Trial Tr., ECF #107 at 16-17, Pg. ID 949-50.) The Court took this language nearly verbatim from Sixth Circuit Pattern Criminal Jury Instruction 12.04.[3]

Jamar Harris now argues that the Court should not have included this language in its instructions for two reasons. First, he observes (correctly) that the "Use Note" for this instruction provides that it should be used "only if the evidence suggests that the defendant gained knowledge of the firearm in the midst of the underlying crime," and he argues that the government did not contend during the trial that he gained knowledge "in the midst" of the robbery. (Motion, ECF #119 at

---

[3] The Court made minor changes to the Pattern Instruction to underscore that the jury could find the required advance knowledge only if it found that Jamar Harris chose to continue his participation in the robbery after he learned that Bell was using the gun. The relevant portion of Pattern Instruction 12.04 provides:

> It is sufficient if the defendant gained the knowledge in the midst of the underlying crime, as long as the defendant chose to continue to participate in the crime and had a realistic opportunity to withdraw. You may, but need not, infer that the defendant had sufficient foreknowledge if you find that the defendant chose to continue his participation in the crime after the defendant knew that an accomplice was using or carrying a firearm.

The Court's changes to the Pattern Instruction actually benefitted Jamar Harris by underscoring that his knowledge had to precede his decision to continue participating in the robbery. And, indeed, Jamar Harris does not object to the Court's deviation from the Pattern Instruction. Instead, as described above, he objects to the fact that the Court gave any instruction on this way of proving advance knowledge.

8

7, Pg. ID 1100.) Instead, he insists, the government's "entire theory" was that he knew about the firearm *before* he entered the store. (*Id.*) He thus concludes that the Court should not have instructed the jury that he could have gained the required knowledge "in the midst" of the robbery. The Court disagrees.

As set forth above, the evidence presented at trial was sufficient to support a finding that Jamar Harris developed the required "advance knowledge" *after* he entered the store. And because there *was* evidence that (in the words of the Sixth Circuit's Use Note) he "gained knowledge of the firearm in the midst of the underlying crime," the Court did not contravene the Use Note by giving the challenged portion of the instructions.

Second, Jamar Harris argues that the challenged portion of the instructions could have been interpreted by the jurors "as *requiring* them to find that [he] possessed the requisite 'advance knowledge' unless [he] chose not to continue participating in the crime and it was unrealistic for him to withdraw." (Motion, ECF #119 at 7, Pg. ID 1100; emphasis added.) He claims that the instruction thus amounted to an unconstitutional "burden shifting presumption or conclusive presumption." (*Id.* at 8, Pg. ID 1101.) Again, the Court disagrees. The Court's instructions did not require the jury to find anything, nor did the instructions direct the jury to presume any facts as true. Rather, the Court simply instructed the jurors that they "*may*, but *need not*" infer Jamar Harris' advance knowledge "*if*" they

9

found that he had continued to participate after learning that Bell was using a firearm. Thus, the instruction did not amount to an impermissible presumption. *Cf. United States v. Garner*, 46 Fed. App'x 278, 290 (6th Cir. 2002) (holding that instruction did not amount to unconstitutional presumption where it informed jurors that they "may . . . find" that a defendant intends the natural consequences of his knowing actions).

Finally, Jamar Harris objects that the Court failed to instruct the jury on the definition of a "crime of violence" when it instructed the jury on the elements of aiding and abetting the use of a firearm during or in relation to a crime of violence. (Motion, ECF #119 at 9, Pg. ID 1102.) But he never asked the Court to define "crime of violence" for the jury, nor did he object to the lack of such an instruction. Indeed, Jamar Harris proposed an instruction on the elements of this offense that (1) did not include a definition of "crime of violence" (but did contain other definitions), and (2) which affirmatively instructed the jury that the interference with commerce by robbery charge (to which he had already pleaded guilty) *was* a "crime of violence." (Def's Proposed Instruction, ECF #94 at ¶ 2A, Pg. ID 527.) And the parties' final *joint* request to charge did not contain a definition of crime of violence. (*See Joint* Req., ECF #96, Pg. ID 530-66.) Under these circumstances, Jamar Harris is not entitled to relief on the ground that the instructions did not define "crime of violence." *See, e.g.*, *United States v. Wooten*,

39 Fed. App'x 83, 89 (6th Cir. 2002) (defendant not entitled to relief based upon allegedly-erroneous jury instruction where he was jointly responsible for drafting jury instructions and failed to object to challenged instruction).

And even if the failure to define "crime of violence" could be deemed an error, it was undoubtedly harmless. *See Neder v. United States*, 527 U.S. 1, 4 (1999) (instruction that erroneously omits an element of the offense is subject to harmless error review). Indeed, the only truly-disputed issue in this case was whether Jamar Harris had the required advance knowledge that Bell would use a gun. Jamar Harris, himself, stressed that precise point to the jury in his opening statement. (*See* 11/30/15 Trial Tr., ECF #105 at 51-52, Pg. ID 671-72.) Jamar Harris never claimed that he did not participate in the underlying robbery, nor did he even attempt to argue to the jury that the robbery did not amount to a "crime of violence." Under these circumstances, the omission of the "crime of violence" definition did not prejudice Jamar Harris in any way, and he is not entitled to a new trial based on the absence of the definition.[4]

---

[4] Jamar Harris did argue to the Court that, as a matter of law and in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the underlying robbery did not amount to a "crime of violence" under 18 U.S.C. § 924(c). (12/1/15 Trial Tr., ECF #106 at 109-10, Pg. ID 884-85.) He does not re-raise that argument in the Motion. The Court rejected the argument when Jamar Harris presented it, and, as the government has shown, the Court's ruling is consistent with myriad decisions by other federal district courts confronting this same question. (*See* Gov't Resp. Br., ECF #122 at 19-20, Pg. ID 1132-33.)

### III. The Court Declines to Grant a New Trial

Finally, Jamar Harris argues in the alternative that the Court should grant him a new trial under Rule 33 of the Federal Rules of Criminal Procedure on the ground that the verdict was against the great weight of the evidence. Generally, such a motion is granted "only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States v. Hughes*, 505 F.3d 578, 592-93 (6th Cir. 2007) (quoting *United States v. Turner,* 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd,* 633 F.2d 219 (6th Cir.1980)).

The Court does not believe that the verdict was against the great weight of the evidence. While the government's case was far from a "slam dunk," the Court is comfortable that the government's evidence reasonably supports the jury's verdict and that the verdict is not against the great weight of the evidence. Contrary to Jamar Harris' argument, this is not a case in which the verdict rests upon inferences impermissibly piled upon one another.

### CONCLUSION

For the reasons explained above, **IT IS HEREBY ORDERED** that the Motion (ECF #119) is **DENIED.**

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: May 3, 2016

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 3, 2016, by electronic means and/or ordinary mail.

                                          s/Holly A. Monda
                                          Case Manager
                                          (313) 234-5113